CITY OF MILWAUKEE, Respondent, vs. BECKER, Appellant.

*December 14, 1920—January 11, 1921.*

*Street railways: Ordinance prohibiting deviation of street car from route: Emergency: Delay at railroad crossing.*

1. An ordinance of the city of Milwaukee prohibiting a street car on which there were passengers from being diverted from the usual course on the line for which it was designated, unless it is disabled or an emergency renders it impossible to proceed in the usual course, was only intended to prevent arbitrary changes in the running of street cars whereby passengers might be compelled to abandon them before they reached their scheduled destination.

2. Where a street car running on a seven-minute headway was detained nine minutes at a railroad crossing and was overtaken at this point by the following car, there was an emergency preventing the car from proceeding in the usual course, so that a motorman was not guilty of violating such ordinance by turning the car around at the first opportunity after crossing a railroad track, though it had not yet reached the end of its scheduled run; and it makes no substantial difference whether the motorman began his change of route on one side of the railroad track or the other.

3. In this case it is not necessary to decide whether the exclusive control over such matters of service as are covered by the ordinance is now vested in the railroad commission, or whether the orders of the engineer of the commission stationed at Milwaukee are effectual.

APPEAL from a judgment of the municipal court of Milwaukee county: E. T. FAIRCHILD, Acting Judge. *Reversed.*

The defendant was held by the district court of Milwaukee county to have violated an ordinance of the city of *Milwaukee.* A trial *de novo* was had in the municipal court upon appeal and he was again so adjudged.

He was a motorman on the North avenue line of the Milwaukee Electric Railway & Light Company. This line runs from Farwell avenue on the east side to Forty-seventh street on the west side of said city and crosses a number of the north and south lines of the same company.

The ordinance involved is as follows:

"No street car company carrying passengers on street car lines within the city of *Milwaukee,* and no agent, officer or employee of such company shall cause any street car upon which there is a passenger or passengers and which is carded, or otherwise designated, if not carded, for a certain line to terminate its run or to be diverted from the usual course on that line before the same shall have reached the end of the line for which it was carded, or otherwise designated, if not carded, when the passenger or passengers boarded the same; provided, that if any such car, from some physical defect or breakdown, shall become so disabled that it shall be necessary to take the same to a car barn or other place for repairs, or if it shall become necessary, because of an emergency rendering it impossible to proceed in the usual course, to divert any such car from the line for which it was carded, or otherwise designated, if not carded, then this section shall not apply."

The defendant was proceeding with a carload of passengers west on North avenue and on a schedule of about seven minutes headway between cars. On arriving at the tracks of the Chicago, Milwaukee & St. Paul Railway Company, which crossed this line between Thirtieth and Thirty-first

streets, his car was detained nine minutes by reason of the operations of a freight train and switch engine over such crossing. While so waiting, the car following him reached the same point, and after the track was cleared the two proceeded further west. At Thirty-fifth street, his first opportunity to do so west of Thirtieth street, the defendant switched his car and turned back to run eastward instead of continuing the run for which his car was scheduled in due course to the end of the North avenue line at Forty-seventh street. Announcement to that effect was made to the passengers in the car by the conductor, and transfers were offered to such passengers who desired to continue further west, permitting them to continue the journey on the car immediately following. A number of the passengers protested against being compelled to thus transfer, insisting that the defendant should proceed to the end of the run.

The court held that the city of *Milwaukee* had power to legislate on the subject matter in question and that the above quoted ordinance was a reasonable and proper exercise of the police power of said city and that the defendant violated it, and so ordered judgment. From such judgment the defendant has appealed.

For the appellant there was a brief by *Van Dyke, Shaw, Muskat & Van Dyke,* attorneys, and *W. T. Sullivan,* of counsel, all of Milwaukee, and the cause was argued orally by *Mr. Sullivan.*

For the respondent there was a brief by *Clifton Williams,* city attorney, and *Joseph L. Bednarek,* assistant city attorney, and oral argument by *Mr. Bednarek.*

ESCHWEILER, J. Having reached the conclusion that under the proper construction to be given to the ordinance in question, if valid, the facts in this case do not warrant a finding that the defendant violated it, we therefore deem it unnecessary to consider or determine the questions argued by respective counsel as to whether the exclusive control and

jurisdiction over such matters of service is now vested in the railroad commission, and whether, therefore, the city of *Milwaukee* has present power or authority to pass such an ordinance, and whether the oral statements or orders by the engineer of the railroad commission stationed at *Milwaukee* are effectual, and we express no opinion on any of such questions.

The evident purpose of the ordinance quoted above is to prevent any arbitrary changes in the running of the street cars in the city of *Milwaukee* whereby passengers may be compelled to abandon the car before reaching the scheduled destination thereof as indicated to them when entering by the sign or placard on said car. It expressly recognizes that situations may arise and emergencies be created whereby such re-routing becomes necessary and proper.

The street car in question was delayed a period of nine minutes by reason of the blocking at the railroad crossing. If it had continued to Forty-seventh street it could not, under the testimony, without running at a dangerous and unusual rate of speed, have completed its run and then back again eastward without substantial interference with its scheduled and usual time and its usual course of running. To have then proceeded at a proper rate of speed to the end of its line would have created an interval of about seventeen minutes instead of the scheduled seven minutes between cars from at least Thirty-fifth street eastward. From such situation an emergency then existed rendering it impossible for the car to proceed in the usual course, and its diversion, therefore, at Thirty-fifth street was proper and not within the penalty of the ordinance.

The city attorney suggests in his brief that it would have been proper procedure for the motorman, after being delayed five minutes or more at the crossing, to have switched back and started east again at Thirtieth street, where there were also switching facilities, rather than at Thirty-fifth street, because this delay was an emergency rendering it

impossible to proceed in the usual course under the very terms of the ordinance itself. The delay having created an emergency within the exception clause of the ordinance, the mere fact that the change was made at the first crossing west of the obstruction rather than at a crossing east thereof made no such substantial difference as would bring the one re-routing within the penalty clause and the other within the exception clause of the ordinance.

*By the Court.*—Judgment reversed, and case remanded with directions to dismiss the complaint.